IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COURTNEY MARIE VENTURINO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, Commissioner | : | |
| of the Social Security Administration | : | NO. 13-6219 |

## ORDER-MEMORANDUM

**AND NOW**, this 17th day of March, 2015, upon consideration of Plaintiff's Brief and Statement of Issues in Support of Request for Review (Docket No. 12), Defendant's Response thereto, Plaintiff's Reply, the Report and Recommendation of United States Magistrate Judge Timothy R. Rice (Docket No. 16), and Plaintiff's Objections thereto (Docket No. 17), **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Objections are **OVERRULED**.

2. The Report and Recommendation is **APPROVED** and **ADOPTED**.

3. Plaintiff's Request for Review is **DENIED**.

Plaintiff Courtney Marie Venturino applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, alleging that she has been disabled since April 10, 2011. The ALJ denied Plaintiff's applications, finding that, from April 10, 2011 through the date of the decision, Plaintiff suffered from severe bipolar and traumatic stress disorder impairments, but that she was not presumptively disabled because her impairments did not meet or medically equal the criteria of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (the "Listings"). According to the ALJ, the record established that Plaintiff had only moderate limitations in social functioning; "moderate restrictions of activities of daily living;" "moderate difficulty in maintaining concentration, persistence or pace[;] and no episodes of decompensation." (R.28.) Based on his analysis of the

record, the ALJ found that Plaintiff did not have the residual functioning capacity to perform relevant work, but was able to perform available light work with certain limitations and, thus, was not disabled.

In her Request for Review, Plaintiff argued that the ALJ lacked substantial evidence for his determination that her impairments did not meet or medically equal the criteria of one of the listed impairments in the Listings and that she, in fact, met the Listing's criteria because the record supports the conclusion that she suffers marked restrictions of activities of daily living and marked difficulties in maintaining social function. She further argued that the ALJ improperly ignored and/or discounted evidence of her impairments, as well as evidence of her inability to sustain employment. Magistrate Judge Rice recommends that we deny the Request for Review, because the ALJ's challenged conclusions are supported by substantial evidence and the ALJ did not err in discounting evidence. Plaintiff now lodges multiple objections to the Magistrate Judge's Report and Recommendation ("R&R"), which we address in the order that she presents them.

Judicial review of the Commissioner's final decision is limited, and the ALJ's findings of fact will not be disturbed if they are supported by substantial evidence. Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008) (citing 42 U.S.C. § 405(g)); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Brownawell, 554 F.3d at 355 (quoting Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003), and citing Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008)). The ALJ's legal conclusions are subject to plenary review. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (citing Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999)). We review de novo those portions of a Magistrate Judge's report and

recommendation to which objections are made.   28 U.S.C. § 636(b)(1).

Plaintiff first objects to the Magistrate Judge's recommendation that the ALJ properly addressed record evidence regarding Plaintiff's GAF scores, and argues that the ALJ did not adequately address certain lower scores.  See Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (requiring the ALJ to "consider all the evidence and give some reason for discounting the evidence she rejects" (citation omitted)).   There were, in fact, numerous GAF scores in the administrative record:   a score of 55 on October 14, 2009, a score of 40 on November 17, 2010, a score of 55 on July 19, 2011, and a score of 45-50 on October 26, 2011.  (R243, 284, 353, 372.)  The ALJ specifically referenced the score of 55 in July of 2011, and further observed that "Plaintiff has been appraised as having GAF assessments as low as 40-50, and as high as 55." (R31.)  While Plaintiff emphasizes that the ALJ did not specifically discuss the October 2011 or November 2010 scores, the ALJ plainly considered those scores as they are the factual basis for his comment that Plaintiff had assessments as low as 40-50.  Moreover, the ALJ adequately explained his refusal to find these lower scores to be decisive of Plaintiff's abilities when he specifically stated that GAF scores are highly subjective, do not address the issue of symptom improvement with appropriate medical care, and are just one factor in an entire medical record.  (See id.)  We therefore overrule Plaintiff's objection concerning the ALJ's consideration of her GAF scores.

Plaintiff also objects to the Magistrate Judge's refusal to recommend that the ALJ committed reversible error based on the ALJ's failure to address the specifics of a mental health crisis that Plaintiff had in April 2011, which, in Plaintiff's view, resulted in the ALJ's erroneous conclusion that her "mental health medical care has been and continues to be essentially routine, conservative and non-aggressive in nature." (R31; see also R32.)  Plaintiff testified at the ALJ hearing that, on April 9, 2011, her boss told her to go to the hospital after she had a bad anxiety attack and threatened to kill herself.  (R50.)  According to Plaintiff, she was treated by Lee

Silverman Fitzgerald, M.D., at Mercy Hospital on April 11, 2011, for an "emergency psychiatric crisis from major depression and anxiety with PTSD," and was prescribed an increased dosage of her current medications as well as new medication for anxiety.  (R176-77; see also R345).  There is, however, scant medical evidence concerning this crisis treatment.  Indeed, there are no records of an April 2011 hospitalization, and the only records that Plaintiff has submitted from Dr. Silverman are a two-page employability assessment form that he filled out on April 15, 2011 (R270-71), and a copy of a prescription that he wrote for Plaintiff that same day.  (R273.)  Given this very limited record evidence regarding the events in April 2011, the ALJ did not analyze the alleged crisis at length.  He did, however, acknowledge that Plaintiff had testified that "she went to the hospital one time," and he also discussed Dr. Silverman's April 15, 2011 assessment.  (R27, 30.)  Under these circumstances, contrary to Plaintiff's contention, the ALJ's conclusion that Plaintiff's "mental health medical care has been and continues to be essentially routine [and] conservative" did not rest on a failure to consider or credit any probative record evidence regarding Plaintiff's April 2011 mental health crisis.  (R31.)  Accordingly, we find no error in the ALJ's treatment of the limited available evidence regarding the April 2011 event, and we overrule Plaintiff's objection to the Magistrate Judge's refusal to find reversible error in that aspect of the ALJ's decision.

Plaintiff next objects to the Magistrate Judge's recommendation that the ALJ's failure to address reports of her work experience was harmless.  The record reflects that Plaintiff worked at McDonalds from July 2007 until September 2010, first as a cashier and then as a lobby worker, and that, from September 2010 until April 9, 2011, she worked as a deli worker at the Fresh Grocer.  (R50-51, 213.)  Plaintiff argues that the ALJ should have considered her functional difficulties in those jobs when ascertaining her current ability to withstand the demands of a competitive work environment in the face of her impairments.  However, consistent with the

Magistrate Judge's recommendation, we find the ALJ's failure to address Plaintiff's personal accounts of her work stresses to be harmless not only because Plaintiff's alleged disability post-dates those jobs and their accompanying stresses, but also because, whatever Plaintiff's difficulties in those positions, the fact remains that she maintained continuous employment with McDonalds for over three years, left that job voluntarily, and subsequently maintained her employment with the Fresh Grocer for more than six months.  Moreover, the record reflects that prior to her leaving the Fresh Grocer job in April 2011, Plaintiff had not attended her monthly medication management appointment for two months, and had not been in therapy for almost a year.[1]  As such, the evidence of Plaintiff's difficult, but multi-year work experience supports – and in no way undermines -- the ALJ's ultimate conclusion that, with appropriate therapy and medical management, Plaintiff has the residual functional capacity to perform unskilled work, as long as she has only occasional interaction with coworkers and supervisors, no interaction with the public, and no exposure to hazards such as unprotected heights and moving machinery.  (See R29.)  We therefore overrule Plaintiff's objection to the Magistrate Judge's recommendation concerning the ALJ's consideration of her work experience.

Plaintiff further objects to the Magistrate Judge's recommendation that we reject her assertion that the ALJ cited only evidence that was favorable to his conclusions.  Plaintiff specifically complains that ALJ did not "discuss observations on mental status exam that [Plaintiff] was guarded, suspicious, submissive, depressed, frustrated and anxious, had constricted/blunted/flat affect and wore bizarre combinations."  (Pl.'s Objections to Magistrate's R&R, at 7)  However, where, as here, there are voluminous medical records, an ALJ "must

---

[1] (See, e.g., R248 (reflecting February 9, 2011 medical management appointment); R176 (revealing that next scheduled medical management appointment is on April 27, 2011); R322 (stating that May 5, 2010 therapy session will be the last session and that Plaintiff will be moved to waiting list for new therapist); R249 (reflecting that, on January 5, 2011, Plaintiff remains on waiting list for new therapist).)

consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law," but need not "make reference to every relevant treatment note." Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001). In the instant case, the ALJ explicitly stated that he had reviewed the "medical evidence of record in its entirety (Exhibits 1F through 7F)," which includes not only the mental status exam observations that Plaintiff now emphasizes, but also significantly more prevalent notations that Plaintiff was, on other occasions, cooperative, appropriately dressed, and had a normal mood and affect. (See R26.) Upon reviewing those varied records, the ALJ acknowledged that the records supported the symptoms that Plaintiff alleged, that Plaintiff appeared to "experience episodic exacerbations of impairment symptomology," and that Plaintiff had "significantly diminished mental functionality." (R30-31.) As such, although he did not specifically reference the "unfavorable" portions of the record on which Plaintiff exclusively focusses, he plainly gave some credit to those portions of the records in finding evidentiary support for Plaintiff's asserted symptoms. We therefore overrule Plaintiff's objection to the Magistrate Judge's recommendation that ALJ did not consider evidence that was only favorable to his conclusions.

Plaintiff additionally objects to the Magistrate Judge's recommendation that the ALJ provided sufficient reasons for discounting the opinion of Dr. Silverman, a treating physician, that Plaintiff was permanently disabled. While the opinions of a "'treating physician are entitled to substantial and at times even controlling weight,'" Johnson, 529 F.3d at 202 (quoting Fargnoli, 247 F.3d at 43), the determination as to whether a plaintiff is disabled is specifically reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1). Moreover, a treating source's opinion is controlling "only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Johnson, 529 F.3d at 202 (alteration in original) (quoting Fargnoli, 247 F.3d at 43).

Here, the ALJ correctly observed that Dr. Silverman's assessment, which was on a two-page check-off form, did not memorialize the specific medical observations on which he based his assessment or offer any rationale for the assessment.  (R28.)   In addition, the ALJ noted that Dr. Silverman "did not cite to any specific occasions which establish the claimant's inability to perform activities of daily living, any specific instances describing her inability to interact with other people, or any specific occurrences utilized as an example of her poor attention or concentration," and also "failed to provide any dates, duration or circumstances of past episodes of decompensation."  (Id.)   Finally, he noted that Dr. Silverman's assessment was not supported by the other medical reports in the record.  (Id.)   While Plaintiff correctly points out that the ALJ could not decipher Dr. Silverman's signature on the assessment and, thus, did not realize that the assessment had been completed by the very doctor who treated Plaintiff during her April 2011 crisis, the fact remains that the ALJ considered the substance of the opinion and provided more than adequate reasons for discounting that opinion.  We therefore overrule Plaintiff objections insofar as they pertain to the Magistrate Judge's recommendation concerning the ALJ's decision to discount Dr. Silverman's opinion that Plaintiff was permanently disabled as of April 11, 2011.

Finally, Plaintiff summarily objects to the Magistrate Judge's ultimate recommendation that there was substantial evidence to support the ALJ's decision that Plaintiff showed less than marked impairments in her activities of daily living and social functioning and, thus, was not disabled.  Plaintiff emphasizes that the various portions of the record reflect that that she has had long periods in which she can barely get out of bed; does not do chores, get dressed or attend to her personal hygiene; and she struggles with social functioning, sometimes role playing interactions to decrease social anxiety, and setting very modest personal goals, such as staying alone in a public place for thirty minutes and having a 10-minute conversation.  (R60-61, 214-15, 308-09, 311-12.)  She appears to contend that the ALJ was therefore required to find that she had marked

7

impairments of daily living and social functioning sufficient to render her disabled.  However, as the ALJ noted, Plaintiff also testified that she prepares microwave meals, does household chores such as laundry, and grocery shops (R60-61) , and previously reported to a consultative examiner both that she was independent in her ability to clean, cook, shop, and do laundry, and that she manages her own personal hygiene  (R283).  Likewise, as to social functioning, the ALJ correctly noted that in spite of Plaintiff's testimony regarding "disabling panic attacks that are triggered by social interactions," her treatment records indicate that she was "motivated to meet new people," was "making progress with being . . . more socially capable and less anxious in her interactions with others."   (R31, 306, 308.)   Accordingly, we conclude that there was substantial evidence to support the ALJ's conclusion that Plaintiff had only moderate impairments of daily living and social functioning.    See Bryan v. Comm'r of Soc. Sec., 383 F. App'x 140, 145 (3d Cir. 2010) (stating that we may not "re-weigh the evidence or substitute our own judgment for that of the ALJ" (citations omitted)).   We therefore overrule Plaintiff's objection to the Magistrate Judge's recommendation in this regard.

       For the foregoing reasons, we overrule Plaintiff's objections in their entirety, and approve and adopt the Magistrate Judge's Report and Recommendation.

                                       BY THE COURT:

                                       /s/ John R. Padova, J.

                                       John R. Padova, J.